[Civ. No. 1997. Fourth Appellate District.—November 29, 1937.]

W. C. MILES, Respondent, v. A. ARENA & COMPANY (a Corporation) et al., Appellants.

Harry W. Horton and Hickcox & Trude for Appellants.

Clarence B. Smith for Respondent.

MARKS, J.—This is an appeal from a judgment awarding plaintiff damages for fifty-six hives of bees killed by drifting dust which was spread by M. L. Carberry by means of an aeroplane on honeydew melons growing on a tract of land being farmed by A. Arena & Company. The evidence in the case is sharply conflicting. We need only consider the evidence most favorable to the support of the findings and judgment as all conflicts were directed to the trial judge.

We cannot disturb his findings merely because of conflicting evidence.

Carberry owned and operated an aeroplane equipped with a power dusting attachment with which he dusted fields of growing vegetables. A. Arena & Company had one hundred forty acres of honeydew melons and had engaged Carberry to dust them with calcium arsenate which contains a considerable percentage of arsenic, a poison of sufficient potency to kill bees. The company furnished the compound used by Carberry and also directed the amount to be used. The details of the method of its application were left to Carberry. It seems clear that in performing this work Carberry was an independent contractor.

Plaintiff had his bees on rented property about one-half mile northwest of the A. Arena & Company property. The trial court found that the poisonous dust floated from the melon field to the apiary, into the hives and killed all the bees. There is ample evidence supporting this finding. There was a light wind blowing from the southeast to the northwest. Witnesses saw the dust floating in the air, like a "fog", from the field towards the apiary. Carberry himself testified concerning the floating qualities of the dust: "It is a good deal like road dust. There is a certain amount of air float material in any dust used to dust a crop with and this air float material will get in the air and it never comes down. I suppose it might drift that far, or ten miles, or twenty miles."

The trial court further found that the bees came to their death by means of the poisonous dust floating from the field to and into the hives and not by their going in search of honey to the blossoms on the field which was being dusted. There is ample evidence to support this finding. Plaintiff testified that he found a fine grey dust in the hives and on the dead bees. All of the bees were dead, including the nurse bees and the queen bee. There is evidence that when bees go to a field that has been dusted with calcium arsenate it takes at least three weeks to kill the workers of a swarm; that the nurse bees and the queen bee never leave the hive during the honey making season. The longest period that could have elapsed between the dusting operation and the finding of the dead bees was fourteen days. Three weeks had not elapsed between the dusting operations and the find-

ing of the bees, all dead, including the nurse bees and the queen bee. This evidence supports the inference drawn by the trial judge that the bees were killed by dust which floated into the hives and not from dust obtained by the bees from the flowers of the melon field.

The trial court awarded damages in the sum of $336.36. No question is raised as to the amount of this award.

We have been cited to no case involving the recovery of damages for death of bees caused by a poisonous dust floating from a field where vegetables were being dusted to the apiary. It must be conceded that, in itself, dusting vegetables to kill pests that prey upon them is a necessary and lawful operation which the owner of the vegetables may perform, either himself or through his servants, or may have performed by an independent contractor. However, he should not do the dusting, or have it done, under conditions which would indicate to a reasonably prudent person that damage to his neighbor would result.

While we have found no case involving operations factually similar to those before us, we can see no reason why the same rule should not apply here as governs in cases where damage to a plaintiff's property has resulted from drifting smoke, dust, noxious gases or similar substances originating on a defendant's property. No person is permitted by law to use his property in such a manner that damage to his neighbor is a foreseeable result. (See Restatement of the Law, Torts, sec. 364 et seq.)

The case of *Hulbert* v. *California Portland Cement Co.,* 161 Cal. 239 [118 Pac. 928, 930, 38 L. R. A. (N. S.) 436], involved damage to citrus trees and citrus fruit on the plaintiff's property caused by dust floating to it from the cement plant of defendant. It was there said:

''It is well settled in California that a nuisance which consists of pouring soot or the like upon the property of a neighbor in such manner as to interfere with the comfortable enjoyment of the premises is a private nuisance which may be enjoined or abated, and for which likewise, the persons specially injured may recover pecuniary damages. (Code Civ. Proc., 731; *Fisher* v. *Zumwalt,* 128 Cal. 493 [61 Pac. 82] ; *Melvin* v. *E. B. & A. L. Stone Co.,* 7 Cal. App. 327, 328 [94 Pac. 390] ; *Judson* v. *Los Angeles Sub. Gas Co.,* 157 Cal. 168, 169 [106 Pac. 581, 21 Ann. Cas. 1247, 26 L. R. A. (N. S.) 183].)

The last-named case was one in which the operation of a gas factory had been enjoined and the following language was used: 'A gas factory does not constitute a nuisance *per se.* The manufacturer in or near a great city of gas for illuminating and heating is not only legitimate but is very necessary to the comfort of the people. But in this, as in any other sort of lawful business, the person conducting it is subject to the rule *sic utere tuo ut alienum non laedas,* even when operating under municipal permission or under public obligation to furnish a commodity. (*Terre Haute Gas Co.* v. *Teel,* 20 Ind. 131; *Attorney-General* v. *Gaslight & Coke Co.,* L. R. 7 Ch. Div. 217; *Sullivan* v. *Royer,* 72 Cal. 248 [13 Pac. 655, 1 Am. St. Rep. 51].) Nor will the adoption of the most approved appliances and methods of production justify the continuance of that which, in spite of them, remains a nuisance. (*Evans* v. *Reading Chemical Fertilizing Co.,* 160 Pa. St. 209, 223 [28 Atl. 702]; *Susquehanna Fer. Co.* v. *Malone,* 73 Md. 268, 276 [25 Am. St. Rep. 595, 20 Atl. 900, 9 L. R. A. 737]; *Susquehanna Fer. Co.* v. *Spangler,* 86 Md. 562 [63 Am. St. Rep. 533, 39 Atl. 270].)'" (See, also, *Vowinckel* v. *N. Clark & Sons,* 216 Cal. 156 [13 Pac. (2d) 733]; *Judson* v. *Los Angeles Suburban Gas Co.,* 157 Cal. 168 [106 Pac. 581, 21 Ann. Cas. 1247, 26 L. R. A. (N. S.) 183]; *Fendley* v. *City of Anaheim,* 110 Cal. App. 731 [294 Pac. 769]; *Williams* v. *Blue Bird Laundry Co.,* 85 Cal. App. 388 [259 Pac. 484].)

The case of *Centoni* v. *Ingalls,* 113 Cal. App. 192 [298 Pac. 47], involved damages resulting from dust floating from defendant's clay bins. It was there said:

"A property owner is entitled to the peaceful enjoyment of his property free from an unlawful invasion of his rights of ownership by the act of another. Dust constitutes a nuisance if it 'causes perceptible injury to the property, or so pollutes the air as to sensibly impair the enjoyment thereof'. (*Tuebner* v. *California Street R. R. Co.,* 66 Cal. 171 [4 Pac. 1162, 1164]; *California Orange Co.* v. *Riverside Portland Cement Co.,* 50 Cal. App. 522 [195 Pac. 694]; *Hulbert* v. *California etc. Co.,* 161 Cal. 239 [38 L. R. A. (N. S.) 436, 118 Pac. 928]; *McIntosh* v. *Brimmer,* 68 Cal. App. 770 [230 Pac. 203].)"

Defendants knew, or should have known, that the light dust projected under pressure onto the melons would float in the

air. There is evidence that a light breeze was blowing during the dusting operations. They should have known that the dust would float for a considerable distance when propelled by such a breeze. Dusting material containing a poison that would kill bees was used. Under the conditions prevailing at the time they should have foreseen the ensuing damage to plaintiff. It follows that they must respond in damages.

■ Plaintiff introduced in evidence a letter written on stationery bearing the heading: ''UNITED STATES DEPARTMENT OF AGRICULTURE—Bureau of Entomology—Pacific Coast Bee Culture Field Station,'' and the signature, ''E. L. SECHRIST—Associate Apiculturist''. The letter stated that ''a reply has been received from the Bureau of Chemistry and Soils on the examination of the dead bees you sent to us, referred to in your letter of August 27. The amount of arsenic in these bees was unusually large, the largest that has yet been found in any bees examined by this bureau.''

There is no showing of the official capacity of Mr. Sechrist. There is no showing that the bees examined were the same bees that were killed by defendant's dusting operations. In another letter admitted in evidence it is stated that the bees examined were forwarded to Washington by a ''Mr. Vansell''. This person is not otherwise mentioned in the record. Plaintiff testified that he shipped some of the bees to the agricultural branch of the state university at Davis and that they were forwarded to Washington. The statements in the letters must, of necessity, have been based on hearsay.

There was no sufficient foundation laid for the introduction of either letter. However, this error is not sufficiently prejudicial to require a reversal of the judgment. There is ample, competent and material evidence in the record to support the finding that plaintiff's bees were killed by the poisonous dust that drifted from the A. Arena & Company field. There has been no miscarriage of justice from the error. (Sec. 4½, art. VI, Const.)

■ Defendants moved for a new trial on the ground, among others, of newly discovered evidence. This newly discovered evidence was the result of an experiment with hives of bees placed near a field being dusted with calcium arsenate. This could hardly be classed as newly discovered evidence which was not available to defendants at the time of trial.

There is no sufficient reason shown why this experiment could not have been performed as well before the trial as after it. Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 27, 1938.