[Civ. No. 4635. Fourth Dist. June 5, 1953.]

D. C. PARKS et al., Respondents, v. ATWOOD CROP DUSTERS, INC. (a Corporation) et al., Appellants.

[1]Advance Report Citation: 40 A.C. 183.

Conron, Heard & James for Appellants.

Mack & Bianco and Henry C. Mack for Respondents.

MUSSELL, J.—This is an action for damages caused by a crop-dusting operation conducted by defendants. On September 18, 1950, defendant Robert Pelletier employed defendant

Atwood Crop Dusters, Inc. to spread a defoliant (aereo cyanamide dust) on his 165-acre cotton field in Kern County. Defendant Tom Jameson was the pilot who spread the defoliant by airplane and James French, another employee of Atwood Crop Dusters, Inc., was in charge of the work. Pelletier's cotton crop was mature and ready for defoliate for harvest and the purpose of defoliating it was to remove the leaves from the cotton plants so that they would not be picked up by the mechanical harvesters and mixed with the cotton. The dusting was done by airplane east and west along the rows and in the operation, the pilot passed over a portion of plaintiffs' 100-acre cotton crop on land adjacent to Pelletier's property on the east and south. Plaintiffs' 100-acre field and Pelletier's adjacent 165-acre field on the west were separated by a farm road approximately 20 feet in width. A pole line, about 20 feet high, ran north and south about 20 feet west of this road and Pelletier's cotton extended about 20 feet east of this pole line to the road.

In dusting Pelletier's field, the pilot, when flying east and upon approaching the pole line, pulled his plane up and flew over it. The gate on the bin on the plane was left open to dust the plants east of the road and this had a tendency to deposit the defoliant dust on plaintiffs' crop across the road. The pilot, in making a turn to fly back over the Pelletier field, flew over plaintiffs' acreage from one-fourth to one-half mile, depending on how tight the turn was.

Mr. French, in charge of the dusting, testified that when the field was dusted, there was a wind from the northwest which was sufficient to carry some of the dust over plaintiffs' field; that on the slight wind prevailing, he estimated that the draft would carry enough for damage for one-third of a mile; that he was familiar with the particular cyanamide dust; that it was ground fairly fine and that the finer particles, which are the most effective in defoliating, drift the farthest in the air; that it will float or drift with the wind; that Mr. Garlow, the field superintendent for plaintiffs, had warned him the day prior to the dusting of defendants' adjoining field against getting any of the dust on the 100-acre field of plaintiffs as it was immature and not ready for defoliation.

Evidence was adduced showing that defendants' crop was planted in April and plaintiffs' on May 10, 1950; that plaintiffs' crop, on September 18, 1950, was immature and not ready for harvest; that it was at least 45 days from harvest

time and that plaintiffs' cotton crop was still in growing condition, some of it still blooming.

The evidence is conflicting as to the effect of the defoliant on plaintiffs' cotton crop. However, there was substantial testimony to the effect that about 45 acres of plaintiffs' cotton field was affected by the dusting; that the plants had been burned; that where the defoliant was used on immature cotton plants, the immature cotton bolls dropped off; that one effect of defoliant was to cause cotton plants to cease manufacturing food while it put out new leaves; that the application of the defoliant retarded the growth of the cotton plants; that plaintiffs' field, before the damage, was in excellent condition.

Various witnesses estimated the yield per acre on plaintiffs' land before damage as ''3 bales or better'' and witnesses for both parties relied in part upon boll counts made in the field at various times in arriving at the probable yield per acre. The actual yield after damage was shown to be 2.28 bales per acre, showing a loss of approximately 72 bales at the stipulated net value per bale of $211.90. The plaintiffs testified that in preparing the complaint, they used an average of the estimated loss of the various men who had examined the field, arriving at 61.5 bales, for which suit was brought. The amount of the verdict returned by the jury in favor of plaintiffs was $13,031.85.

Appellants' assignments of error are that the evidence was insufficient to justify the verdict; errors of law in instructing the jury upon the question of damages; errors of law in refusing instructions pertaining to unavoidable accident; and misconduct of counsel in endeavoring to inject insurance into the case in chief. We see no error in any of these assignments.

There was substantial evidence that defendant Pelletier, who caused the aereo cyanamide to be applied, was fully aware of its effect upon cotton plants. In fact it is conceded that the substance used was a defoliant applied for the purpose of removing the leaves from the cotton plants. There is evidence that Mr. French was warned by plaintiffs' foreman not to dust plaintiffs' crop. It was immature and not ready for defoliation. The defoliant was applied to defendants' property at a time when defendants knew or should have known that the wind would carry the substance over and upon plaintiffs' cotton crop. The dusting was done under conditions which would indicate to a reasonable and prudent person that damage to plaintiffs' crop would result.

As was said in *Miles* v. *A. Arena & Co.*, 23 Cal.App.2d 680, 683 [73 P.2d 1260] : ''No person is permitted by law to use his property in such a manner that damage to his neighbor is a foreseeable result.'' In that case plaintiff was awarded damages for destruction of bees by drifting dust which was spread by airplane on a crop of melons growing on land owned by defendants. While the dust in the instant case was not poisonous, as in the Miles case, it was shown to be harmful when applied to immature cotton plants and the same rule is applicable.

In *Adams* v. *Henning*, 117 Cal.App.2d 376 [255 P.2d 456], this court held that it was error to grant a nonsuit where part of the evidence justified an inference that some of a spray which defendants caused to be released from an airplane over land of one defendant adjoining that of plaintiff, and which contained elements used for killing weeds and insects, was deposited on plaintiff's land and that some damage resulted therefrom.

Appellants contend that the court erred in giving the following instruction:

''If, adhering to the Court's instructions, you should find plaintiffs are entitled to a verdict against the defendants, or some of them, then it will be your duty to award plaintiffs such damages as will compensate them reasonably for all detriment suffered by them of which defendants' negligence as found by you was a proximate cause, whether such detriment could have been anticipated or not.

''In this case it has been stipulated that the value of the cotton at the time of the accident was $277.90 a bale, for seed and cotton; and that the cost of harvesting and ginning was $66.00 a bale, leaving a net value per bale of $211.90.

''Therefore, in fixing plaintiffs' damages, if any, you must determine the number of bales of cotton lost by the acts complained of, and multiply that number of bales by $211.90, which is the damage to which plaintiffs are entitled if they are entitled to a verdict.

''In determining these matters, you may consider the average yield per acre of such crops where not so injured and on other similar lands in the immediate neighborhood cultivated in like manner, the state of growth at the time of injury, all to the end of determining the crop which would have been produced had no injury been done thereto by the acts of the defendants.

"*Wolfsen* v. *Hathaway,* 32 Cal.2d 632 [198 P.2d 1].

"*Dutra* v. *Cobral,* 80 Cal.App.2d 114 [181 P.2d 26]."

The argument advanced is that the instruction is erroneous in singling out one type of evidence of damage to the exclusion of all others and thereby giving undue prominence to a particular type of evidence. We find no merit in this argument. ▪ The proper measure of damages is the market value of the estimated product at the time of destruction, less the cost of producing and marketing the same. (*Wolfsen* v. *Hathaway,* 32 Cal.2d 632, 644 [198 P.2d 1].) After plaintiffs introduced testimony that their cotton crop would have matured from the date of the dusting to harvest without further work or expense, and that the harvesting and ginning costs were respectively $55.20 and $10.80 per bale, defendants stipulated that the market price of cotton was $46.40 per bale for seed and $231.50 for lint, less $10.80 for ginning and $55.20 for picking, leaving the net value per bale at $211.90.

▪ In arriving at the number of bales lost by plaintiffs by reason of the dusting, the jury was instructed to consider the average yield per acre if plaintiffs' crop had not been injured and in this connection to consider the condition of crops on similar land in the immediate neighborhood. The instruction did not rule out consideration of the testimony that there was no damage at all or consideration of the testimony of experts or the method used by some witnesses to estimate the damage. The instruction did not overemphasize any particular type of evidence to the exclusion of other evidence as to damage. An instruction quite similar to the one criticized here was given in *Wolfsen* v. *Hathaway, supra,* page 646.

▪ Appellants next argue that the court should have given offered instructions pertaining to unavoidable accident. Under the evidence here it was not error to fail to instruct the jury on this subject since the jury was fully and fairly instructed on the doctrine of negligence and proximate cause. (*McMahon* v. *Marshall,* 111 Cal.App.2d 248 [244 P.2d 481]; *Jaeger* v. *Chapman,* 95 Cal.App.2d 520 [213 P.2d 404].)

▪ Finally, it is argued that counsel for plaintiffs were guilty of misconduct "in endeavoring to inject insurance into the case in chief," by efforts to infer that one Gordon Roesch was an insurance representative interested in the case. However, there was no testimony introduced to the effect that Roesch was an insurance representative and he was not referred to as such during the trial. A letter, which, on its caption referred to Lloyd's of London, was marked for identi-

fication but never introduced in evidence or shown to the jury. No prejudicial misconduct appears.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied June 26, 1953, and appellants' petition for a hearing by the Supreme Court was denied July 28, 1953.