[Civ. No. 31427. Fourth Dist., Div. One. Mar. 15, 1984.]

SKF FARMS, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
HUMMINGBIRD, INC., et al., Real Parties in Interest.

[Civ. No. 31428. Fourth Dist., Div. One. Mar. 15, 1984.]

JERRY GONZALES, SR., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
HUMMINGBIRD, INC., et al., Real Parties in Interest.

COUNSEL

Sutherland & Gerber, Ravinder Samra, Ronis, Ronis & Ronis and John George Ronis for Petitioners.

No appearance for Respondent.

Hart & Michaelis, James I. Michaelis, Engstrom, Lipscomb & Lack and Douglas S. Knoll for Real Parties in Interest.

OPINION

BUTLER, J.—Petitioners SKF Farms and Jerry Gonzales, Sr., Jerry Gonzales, Jr., and Victor J. Gonzales (collectively called petitioners) seek writs of mandate after the superior court sustained without leave to amend demurrers to certain of their causes of action. Both petitions present identical issues and have been consolidated for purposes of this proceeding.

Petitioners own land in San Diego County on which they grow lettuce and other broad-leaf crops. Real parties Henry and Herman Piper own a large neighboring farm where they grow wheat and other grain crops. In February 1983, the Pipers hired real parties Hummingbird, Inc., and Sam Thomas to aerially dust the Pipers' wheat crop with an herbicide called 2,4-

D.[1] The chemical spray drifted onto petitioners' fields causing severe crop damage.

Petitioners sued real parties for damage to their crops, alleging, among other things, the aerial application of 2,4-D is an ultrahazardous activity subject to strict liability (first and fourth causes of action). They also alleged the aerial spraying was done wilfully, maliciously and with a conscious disregard of the probable consequences, thus entitling petitioners to punitive damages (seventh cause of action). Real parties demurred to these causes of action. The superior court sustained the demurrers without leave to amend, ruling as a matter of law crop dusting is not an ultrahazardous activity subject to strict liability. The court also ruled petitioners may plead only a negligence cause of action and therefore are not, as a matter of law, entitled to punitive damages.

A demurrer tests the pleadings alone and not the evidence or other extrinsic matters. Therefore, it lies only where the defects appear on the face of the pleading or are judicially noticed (Code Civ. Proc., §§ 430.30, 430.70). The only issue involved in a demurrer hearing is whether the complaint, as it stands, unconnected with extraneous matters, states a cause of action (*Griffith* v. *Department of Public Works* (1956) 141 Cal.App.2d 376, 381 [296 P.2d 838]).

The question presented by real parties' demurrer in this case is whether crop dusting is an ultrahazardous activity. Although several early decisions from California Courts of Appeal have discussed liability for crop dusting in terms of negligence or nuisance (see *Miles* v. *A. Arena & Co.* (1937) 23 Cal.App.2d 680 [73 P.2d 1260]; *Parks* v. *Atwood Crop Dusters, Inc.* (1953) 118 Cal.App.2d 368 [257 P.2d 653]), no California court has ever squarely addressed the issue of whether crop dusting is abnormally dangerous and therefore subject to strict liability. More recently, several agricultural jurisdictions have confronted the issue and held crop dusting to be ultrahazardous. (See, e.g., *Loe* v. *Lenhardt* (1961) 227 Ore. 242 [362 P.2d 312]; *Langan* v. *Valicopter, Inc.* (1977) 88 Wn.2d 855 [567 P.2d 218]; see also Comment, *Crop Dusting: Two Theories of Liability?* (1968) 19 Hastings L.J. 476; Note, *Crop Dusting: Legal Problems in a New Industry* (1953) 6 Stan.L.Rev. 69 (suggesting crop dusting is a proper subject for strict liability).)

---

[1]2,4-D is a restricted agricultural chemical used to kill weeds in narrow-leafed crops such as wheat. However, 2,4-D is extremely toxic to broad-leafed crops such as lettuce.

Section 520, Restatement Second of Torts enumerates the factors to be considered in determining whether an activity is "abnormally dangerous" or "ultrahazardous": "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." Whether a particular activity is abnormally dangerous is to be determined by the court "upon consideration of all the factors listed in this Section, and the weight given to each that it merits upon the facts in evidence." (Rest.2d Torts § 520, com. *l.*) Due to the interplay of the various factors, it is impossible to define abnormally dangerous activities. "The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability from the harm that results from it, even though it is carried on with all reasonable care. In other words, are its dangers and inappropriateness for the locality so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes without the need of a finding of negligence." (*Id.* at § 520, com. f.) Thus, by its very nature, the issue of whether an activity is ultrahazardous cannot be decided on demurrer.

The court here, in ruling on real parties' demurrer, found crop dusting to be "a matter which is in common usage in connection with the agricultural aspect of the State of California and therefore does not constitute an ultrahazardous activity." In making this determination, the court considered only one of six factors and necessarily went beyond the pleadings. Thus, it was error to sustain the demurrer to petitioners' strict liability causes of action.[2]

The court also erred in sustaining without leave to amend petitioners' punitive damages cause of action. Petitioners' complaint alleges real parties "knew or should have known" the specific facts regarding the dangers of crop dusting. The complaint also states real parties consciously chose to disregard the dangers; elevated their own economic interests above

---

[2]Our decision here should not be construed as finding crop dusting is an ultrahazardous activity. Our holding simply means the determination of whether real parties' crop dusting activity was ultrahazardous is not appropriate at the pleading stage. Petitioners are entitled to plead both negligence and strict liability. The court must determine, upon hearing the evidence and weighing the various factors listed in section 520, whether the jury should be instructed that crop dusting is an ultrahazardous activity. (See BAJI No. 6.60.)

those of their neighbors; sprayed their fields without forewarning petitioners; and dusted in a "reckless and callous" manner. Petitioners further allege after the spraying and resulting damage, real parties attempted to conceal their tortious conduct by withholding "legally mandated pesticide use reports." The complaint concludes by stating real parties' acts were "wilful, malicious, oppressive, and done with a conscious disregard of the probable consequences."

"Oppression" is defined by the Civil Code as any conduct which subjects a person to "cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c)(2).) The statute further defines "malice" in part as "conduct which is carried on by the defendant with a conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1).) ■ Even "nonintentional torts" may form the basis for punitive damages when the conduct constitutes conscious disregard of the rights or safety of others (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 158 [181 Cal.Rptr. 784, 642 P.2d 1305]). "Nonintentional conduct comes within the definition of malicious acts punishable by the assessment of punitive damages when a party intentionally performs an act from which he knows, or should know, it is highly probable harm will result. [Citations.]" (*Ford Motor Co.* v. *Home Ins. Co.* (1981) 116 Cal.App.3d 374, 381 [172 Cal.Rptr. 59].)

■ For purposes of a demurrer, all facts well pleaded and those reasonably arising by implication must be deemed true (*Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103, 114 [137 Cal.Rptr. 797]). Petitioners have alleged, in the language of Civil Code section 3294, real parties are guilty of "fraud, oppression and malice." Further, the complaint describes conduct on the part of real parties from which a "conscious disregard" for petitioners' rights may be inferred. Thus, the allegations in petitioners' complaint are sufficient to state a cause of action for punitive damages. (See *Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 473 [20 Cal.Rptr. 609, 370 P.2d 313]; *Semole* v. *Sansoucie* (1972) 28 Cal.App.3d 714, 718-719 [104 Cal.Rptr. 897].)

Real parties have responded to the petition and the remedy is clear. An alternative writ or order to show cause could add nothing to the presentation already made. A peremptory writ is proper (Code Civ. Proc., § 1088; *United Nuclear Corp.* v. *Superior Court* (1980) 113 Cal.App.3d 359 [169 Cal.Rptr. 827]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165]).

Let peremptory writs of mandate issue directing the superior court to vacate its orders sustaining real parties' demurrers and to reinstate petitioners' first, fourth and seventh causes of action.

Brown (Gerald), P. J., and Cologne, J., concurred.