Filed 8/5/13  Cearlock v. Lambertson CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BRUCE CEARLOCK,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PETER LAMBERTSON et al.,<br><br>    Defendants and Respondents. | A136742<br><br>(San Francisco County<br>Super. Ct. No. CGC-10-500751) |

When an employee injures a bystander while fleeing the police, is the employer liable for those injuries under the doctrine of respondeat superior?  The answer in this case is no, because assuming an employment relationship can be established, the flight from the police was not an activity within the course and scope of that employment.  We also reject a claim that assisting another in evading the police amounts to an ultrahazardous activity giving rise to strict liability.  We affirm the trial court's order granting nonsuit on claims by plaintiff and appellant Bruce Cearlock against defendants and respondents 1054 Kearny, LLC and Peter Lambertson.

I. FACTS AND PROCEDURAL HISTORY

Police were called to the Heaven Mini Theater (Theater), an adult entertainment business in San Francisco, to investigate an altercation between some patrons and the Theater's doorman.  One officer went inside and spoke to the manager, Michael Canavan, who claimed to be the only male present.  The officer then saw a second man, later identified as Richard Lund, close the door to a room.  Lund jumped out the second storey

1

window of that room and landed on plaintiff, who was standing on the sidewalk below. Lund ran from the scene and was arrested a few blocks away.

Plaintiff filed this personal injury action against Lund, also naming as defendants 1054 Kearny LLC, the limited liability company that operated the Theater, and Lambertson, a member of the LLC (collectively, "defendants"). The first amended complaint alleged Lund was an employee of the Theater, and sought relief against defendants on theories of negligent hiring, negligent supervision and respondeat superior. Lund did not appear in the action.

The case was called for jury trial. Plaintiff's counsel filed a trial brief indicating relief would be sought on two theories: (1) Defendants were liable for Lund's negligent and intentional conduct under the doctrine of respondeat superior; and (2) Defendants were strictly liable for plaintiff's injuries, because the Theater manager had assisted Lund in resisting arrest and in so doing, engaged in an ultrahazardous activity.[1] Defendants filed a written motion for nonsuit, based on the lack of evidence that Lund was an employee of the Theater's or was acting in the course and scope of such employment when he fled from the police and injured plaintiff. The parties agreed plaintiff's counsel would present an opening statement before a jury was empanelled and the court would rule on the nonsuit motion based on that opening statement.

Plaintiff's counsel gave an opening statement setting forth the following facts: Plaintiff was standing on the sidewalk near a bar his wife owned while she conducted business inside; he was slammed to the sidewalk when a man (Lund) jumped out the window of the Theater and landed on him; police had gone to the Theater that evening in response to an incident involving the doorman in which some customers were sprayed with pepper spray; the Theater employed a doorman to attract and deal with customers; an officer went inside the Theater looking for the doorman and was told by the manager there were no other males on the premises; the manager was on the phone with the Theater's lawyer at the time and told the officer he could not look through the rooms

---

[1] Plaintiff did not argue that defendants were themselves negligent.

without a search warrant. The officer saw a man in one of the rooms, but when he was given permission and entered the room the man had disappeared and the window was open; the man (Lund) had jumped out the window and was apprehended by police after a chase; the defendants claimed Lund did not work for the Theater but was a friend of the manager's who just hung around, though several times after the incident one of the officers saw Lund standing in front of the Theater's door behind a roped barricade. Counsel also stated that Lund was later hired as a doorman at the bar owned by plaintiff's wife, but they fired him when they discovered he was the person who had injured plaintiff. Counsel acknowledged there were no records showing who was working at the Theater that night because the Theater did not keep such records, but stated that Lund was acting within the course and scope of his duties as the doorman for the Theater that night.

After hearing the opening statement by plaintiff's counsel, the trial court granted the motion for nonsuit and dismissed the action against defendants. It concluded no reasonable trier of fact could find the actions by Lund were in furtherance of his employment, assuming he was an employee of the Theater.

## II. DISCUSSION

### *Standard of Review: Nonsuit*

"A defendant is entitled to nonsuit if the trial court determines as a matter of law that plaintiff's evidence, when viewed most favorably to the plaintiff under the substantial evidence test, is insufficient to permit a jury to find in his favor." (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 713.) Where, as here, the nonsuit was based on the plaintiff's opening statement, we must assume the plaintiff can prove all the facts set forth. (*Michael E.L. v. County of San Diego* (1986) 183 Cal.App.3d 515, 533.) Nonsuit is appropriate where the plaintiff's opening statement or evidence raises nothing more than speculation, suspicion, or conjecture. (*Helm v. K.O.G. Alarm Co.* (1992) 4 Cal.App.4th 194, 198, fn. 1.) On appeal, we review a grant of nonsuit de novo. (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1541–1542.)

*Respondeat Superior*

Plaintiff claims the trial court erred in granting defendants' motion for nonsuit because the facts set forth in the opening statement would support a verdict in his favor under a theory of respondeat superior. We disagree.

Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of its employees committed within the scope of their employment. (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296 (*Lisa M.*).) Ordinarily, the scope of employment presents a question of fact, but it becomes a question of law when the relevant facts are undisputed and no conflicting inferences are possible. (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1019 (*Farmers*).) The plaintiff has the burden of proving an activity by an employee fell within the scope of the employment. (*Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 812 (*Delfino*).)

An employer is vicariously liable for an employee's tort when that tort is a generally foreseeable consequence of the employment activity. (*Vogt v. Herron Construction, Inc.* (2011) 200 Cal.App.4th 643, 649.) In this context, a "foreseeable" risk simply means that " ' "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." ' " (*Ibid.*) The question is whether the risk was "typical of or broadly incidental to the enterprise undertaken by the employer" or an " 'outgrowth' " of the employment. (*Lisa M.*, *supra*, 12 Cal.4th at p. 298; see also *Myers v. Trendwest Resorts, Inc.* (2007) 148 Cal.App.4th 1403, 1428.)

Although an employee's willful, malicious, and even criminal torts may fall within the scope of employment, "an employer is not strictly liable for all actions of its employees during working hours." (*Farmers*, *supra*, 11 Cal.4th at p. 1004.) "The nexus required for respondeat superior liability—that the tort be engendered by or arise from the work—is to be distinguished from 'but for' causation. That the employment brought the tortfeasor and victim together in time and place is not enough." (*Lisa M.*, *supra*, 12 Cal.4th at p. 298.)

4

The parties in this case agree that plaintiff was injured when Lund jumped out the second storey window of the Theater while trying to evade the police. Assuming the facts recited in plaintiff's opening statement were sufficient to support an inference that Lund was employed by the Theater as its doorman, his flight was not an outgrowth of that employment and was not an activity broadly incidental to the Theater's operations. (*Lisa M.*, *supra*, 12 Cal.4th at p. 298.)

Plaintiff argues that Lund's flight fell within the scope of his employment because the police were investigating an altercation that involved his duties as a doorman. While the incident leading to the investigation might well have been one for which respondeat superior liability could have been imposed (assuming an employment relationship could be established), Lund's flight from the police was an activity that cannot be fairly characterized as an outgrowth of, or incidental to, his employment (if any) at the Theater. Rather, his flight was an "aberrant decision to engage in conduct unrelated to his duties" (*Lisa M.*, *supra*, 12 Cal.4th at p. 303), and cannot be imputed to defendants.

The decision in *Lisa M.*, cited by plaintiff, is illustrative. There, a patient brought suit against a hospital after one of its ultrasound technicians committed sexual battery while examining her. The court concluded that absent a showing of affirmative negligence on the part of the hospital, the technician's conduct was "too attenuated" to impose vicarious liability. (*Lisa M.*, *supra*, 12 Cal.4th at p. 305.) The sexual battery "did not derive from any events or conditions of [the technician's] employment, nor were his actions provoked by anything that occurred during the prescribed examination. Hospital, by employing the technician and providing the ultrasound room, may have set the stage for his misconduct, but the script was entirely of his own, independent invention." (*Id*. at p. 306.) The sexual battery in *Lisa M.*, which was part and parcel of an examination that was itself an action within the scope of employment, seems more foreseeable than Lund's conduct in this case, where the Theater could not be expected to anticipate that Lund would react to a police investigation by jumping out a window and attempting to flee.

5

Plaintiff contends he should have been permitted to proceed to trial on the theory, asserted in his trial brief, that defendants were strictly liable for Lund's flight from the police as an ultrahazardous or abnormally dangerous activity. This theory was not addressed by either the parties or the court during the proceedings on the motion for nonsuit. Assuming the issue is properly before us on appeal, it fails as a matter of law. (*City of Livermore v. Baca* (2012) 205 Cal.App.4th 1460, 1465.)

In determining whether an activity is abnormally dangerous or ultrahazardous, a court considers the " '(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes. . . . [Citation.]' " (*SKF Farms v. Superior Court* (1984) 153 Cal.App.3d 902, 906.) " 'The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability from the harm that results from it, even though it is carried on with all reasonable care. In other words, are its dangers and inappropriateness for the locality so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes without the need of a finding of negligence.' [Citation.]" (*Ibid*.)

What constitutes an ultrahazardous activity is an issue of law. (*Luthringer v. Moore* (1948) 31 Cal.2d 489, 496.) Examples of ultrahazardous activities include the keeping of animals that are likely to trespass or have known dangerous propensities, and dangerous uses of land, such as the storage of explosives, blasting, and crop-dusting. (*Goodwin v. Reilley* (1985) 176 Cal.App.3d 86, 91 (*Goodwin*); see also *Lipson v. Superior Court* (1982) 31 Cal.3d 362, 377.) Conversely, the act of driving a motor vehicle under the influence of alcohol, though indisputably dangerous, is not considered

ultrahazardous.  (*Goodwin*, at p. 92.)  Ultrahazardous conduct " 'does not so far depart from social standards as to fall within the traditional bounds of negligence—usually because the advantages which it offers to the defendant and the community outweigh even the abnormal risk; but which is still so far socially unreasonable that the defendant is not allowed to carry it on without making good any actual harm which it does to his neighbors.' "  (*Id*. at p. 91.)

Plaintiff argues the Theater's manager and employee, Michael Canavan, engaged in ultrahazardous activity by assisting Lund, a crime suspect, in his evasion of the police. Assuming the facts recited in the opening statement can be so construed, we disagree that strict liability would be appropriate under the facts of this case.  The rationale for imposing strict liability is "certain activities under certain conditions may be so hazardous to the public generally, and of such relative infrequent occurrence, that it may well call for strict liability as the best public policy."  (*Luthringer*, *supra*, 31 Cal.2d at p. 500.)  Assisting another in evading the police is an activity that can take many forms, many of which will pose no general risk to the public at all, and all of which can be adequately handled, for purposes of liability, under a negligence rubric.  (See *Goodwin*, *supra*, 176 Cal.App.3d at p. 92.)

## DISPOSITION

The judgment (order granting nonsuit and dismissing the case as to defendants Peter Lambertson and 1054 Kearny, LLC) is affirmed.  Defendants shall recover their ordinary costs on appeal.

7

_____

NEEDHAM, J.

We concur.

_____

JONES, P. J.

_____

SIMONS, J.