EDWARD WILLIAM HOPPER, RESPONDENT, v. CHARLES COOPER & COMPANY, INCORPORATED, APPELLANT.

JOHN CARROLL, RESPONDENT, v. CHARLES COOPER & COMPANY, INCORPORATED, APPELLANT.

JAMES KELLY, ADMINISTRATOR AD PROSEQUENDUM OF JAMES M. KELLY, DECEASED, RESPONDENT, v. CHARLES COOPER & COMPANY, INCORPORATED, APPELLANT.

CHARLES J. O'NEILL, ADMINISTRATOR AD PROSEQUENDUM OF JOHN P. O'NEILL, DECEASED, RESPONDENT, v. CHARLES COOPER & COMPANY, INCORPORATED, APPELLANT.

Submitted May 27, 1927—Decided October 17, 1927.

For the appellant, *Lindabury, Depue & Faulks* (*J. Edward Ashmead,* of counsel).

For the respondents, *Thomas J. Armstrong* (*George Cutley* and *William George,* of counsel).

The opinion of the court was delivered by

KALISCH, J. The four cases, which are here for review on an appeal from the Supreme Court, arose out of the same accident, and by consent of counsel were tried together at the Hudson Circuit, and in each case there was a verdict for the plaintiff.

The plaintiffs-respondents brought four separate actions, two of which were for the recovery of damages for personal injuries sustained by them through the negligence of the defendant-appellant, and the other two actions were brought under the Death act, by the administrators, plaintiffs-respondents, against the same defendant-appellant, to recover from it the pecuniary loss sustained by the next of kin, as a result of negligently causing the death of plaintiffs' decedents.

There are nineteen grounds of appeal, two of which are founded upon the refusal of the trial judge to nonsuit the plaintiffs and in refusing to direct verdicts for defendant.

A careful perusal and consideration of the testimony in the case, and of the grounds urged for a nonsuit and for a direction of verdicts ·for the defendant, and of the charge of the learned trial judge to the jury make it manifest that his action in refusing to grant either motion embodies in· one form or another, with one or two minor exceptions, all questions presented in the nineteen grounds of appeal, therefore, it becomes unnecessary to deal separately with each ground of appeal.

The facts of the case are briefly these: The plaintiff Hopper started from Jersey City, in his father's automobile, with four

lead jugs given him by a florist, with instructions to go to the Charles Cooper Chemical Company, at Newark, to have two of the jugs filled with hydrofluoric acid and to obtain a rebate on the other two. On his way to the Cooper manufactory he met three friends and invited them to come with him on his errand, which invitation they accepted. Upon arriving at his destination he took the four jugs into the Cooper plant and ordered twenty pounds of hydrofluoric acid to be put in two of the jugs—ten pounds in each jug—and asked a rebate on the other two jugs. A rebate was refused, the cashier stating that the company could not use them. Upon the request of Hopper the cashier then selected the two best jugs to be filled with the acid, and the remaining two jugs Hopper took with him and placed them in the back of the car, and got into the car to wait for the jugs which he left to be filled. About twenty minutes elapsed between the time when the two jugs were taken to be filled by an employe of the company and brought back filled to the automobile in which Hopper was waiting for them. They were brought and placed in the automobile by one of the appellant's employes. The distance from the place at which the jugs were filled to Hopper's car was a block and a half. After the jugs had been placed and arranged in the car Hopper took his seat at the wheel and started the car, and had partially turned the car around to return to Jersey City when the cork from the tall jug blew out followed by a portion of the acid which sprayed over the occupants of the car. It is conceded in appellant's brief that two or two and a half minutes had elapsed from the time the jugs were placed in the car until the happening of the accident. As a result of the explosion Hopper, Carroll, Kelly and O'Neill were injured. The two former recovered, and the latter, Kelly and O'Neill, died within an hour afterwards of their injuries. There was testimony to the effect that when the jugs were placed in the car they were hot—one hotter than the other; that the jugs were corked with plain corks; that there was no paraffin wax around the cork which blew out; that the usual practice was to place paraffin paper around the cork and tie it with twine; that

the common and safe practice was, and had been the practice of the appellant company, to let an hour and a half or two hours elapse after filling a jug with hydrofluoric acid before delivering it to the purchaser. There is an unanimity of opinion of the expert witnesses, produced by plaintiff and defendants in the court below, to the effect that hydrofluoric acid is a highly dangerous substance when brought in contact with silicates or dirt containing silicate. When this contact occurs, according to their testimony, it causes the formation of gas which is accompanied by a rising temperature.

The dangerous and destructive character and force of the acid in question, when in contact with silicate or dirt containing silicate, was tragically exemplified by what happened to the occupants of the car, in a more forceful and impressive manner than can be expressed in words. One of the experts testified that the fact that the reaction of the acid became sufficiently violent to blow out the stopper, which had been firmly imbedded in the neck of the jug, according to the testimony of the appellant's employe, "shows that the proper proportion of the materials and condition of the cake was such as to require that length of time, whatever it may be, precisely in minutes, which transpired between the filling of the jug and the blowing out for the reaction to reach and proceed into the violent stage." This, according to the testimony, it did, in about twenty minutes after the jugs had been delivered to be filled. For, according to the testimony, it took ten minutes to fill the jugs, and a few more minutes were consumed in taking them to the car. Testimony elicited from the experts tended to show that there was a simple, common and safe method by which all danger of explosion as a result of hydrofluoric acid coming into contact with foreign matter can be avoided, namely, by leaving the container after filling it uncorked for an hour and a half to two hours, so as to permit the gases engendered by the acid, in coming in contact with foreign substances, to flow out of the open neck of the container. Moreover, we have in this connection the testimony of Hopper to the effect that for a number of years he had on numerous occasions brought for his father, to the

appellant company's plant, jugs bought of it to be refilled with hydrofluoric acid, and that on each of these occasions, which were many, he was obliged to wait for one hour and a half to two hours before they were redelivered to him.

The testimony of the experts that leaving jugs to be refilled with hydrofluoric acid uncorked for the space of an hour and a half to two hours was a safe means to prevent explosions, obviously, had an important bearing on the degree of care exercised by the appellant in refilling the jugs in question, and, especially, on appellant's knowledge of the danger to be apprehended from a too premature corking of the containers.

According to the testimony of the foreman of the appellant company it had a standing order "to see that the containers were clean, turn them upside down and tap them to see if there was any loose material or spent acid," and in order to avoid explosions to see to it that foreign substances were cleaned from jugs before putting hydrofluoric acid in. There is plenary testimony that the appellant was aware of the danger to life and limb by putting hydrofluoric acid in containers which contained silicates or foreign matter containing silicate. The appellant was not a manufacturer of the acid, but a jobber of it. There was no claim that the acid was not up to the best standard of quality, nor was there any claim that it operated in an abnormal way when it came in contact with foreign matter, such as has been indicated. The two jugs were supplied with the acid from the same source of supply, almost simultaneously, and were corked after being filled in the same manner with this difference, that one jug was corked with a paraffin cork, whereas the other, from which the cork was blown out, was not.

This was substantially the posture of the case when both sides rested. It is to be observed that there was very little controversy over the facts. The case was pre-eminently a factual one requiring the application of familiar principles of the law of negligence.

For the appellant it is contended that the facts and circumstances, developed by the testimony, show no legal duty

owing from the appellant to the plaintiffs and plaintiffs' decedents to exercise reasonable care, to examine and inspect the jug in order to ascertain whether or not they contained any foreign matter, which, if brought in contact with the acid to be poured therein, would form dangerous gases, endangering life or limb of one handling or being near the jug, because it appeared that the jug which exploded was furnished by the purchaser, and, therefore, the appellant had a right to assume that it was in a fit condition to be filled with hydrofluoric acid; that the proximate cause of the accident was the presence of siliceous matter in the jug at the time it was presented to the appellant for filling, and no act of the appellant had been shown to break the causal connection or to make it in any way responsible for the accident. This argument is palpably unsound. Moreover, it ignores the uncontradicted fact that the four jugs were brought to the appellant's plant to be filled, and that it was an employe of the appellant who selected from the four jugs the two best for the purpose. But even apart from this situation no reasonable and humane argument can be predicated upon the premises advanced by counsel of appellant, that because the purchaser brought the jugs to appellant's plant, therefore the appellant, though he knew the operation of the acid, when it comes in contact with siliceous matter, produces noxious and explosive gases, and when such siliceous matter meets the hydrofluoric acid in a corked jug, the condition of such jug becomes a menace to life and limb, owed no legal duty to the purchaser, nor to the public, to use reasonable care to examine and inspect the jugs before filling and delivering them.

In view of the uncontradicted testimony that there was a standing order that the jugs to be filled at the plant were to be inspected and examined in order to detect foreign substances therein, before the acid was put into them, the only permissible inference is that the appellant was fully aware of the highly dangerous character the acid assumed when coming in contact with such foreign matter. It is therefore an untenable position to take, that because the jug was not one of the jugs of appellant's and was brought to its plant

by a purchaser to be refilled, there was no duty owing by the appellant to either the purchaser of the acid or to the general public to use due and reasonable care not to subject either to the danger of life or limb.

It cannot be successfully controverted that the jug, in the condition in which it was at the time it was delivered to Hopper, contained an element which was highly dangerous to the safety of the public, and, hence, was clearly a public nuisance. The act of delivering a jug containing a foreign substance in conjunction with hydrofluoric acid, to be carried along the public highway, is akin to sending a deadly bomb into the midst of a community. To adopt appellant's contention would lead to a subversion of well settled legal principles. For instance, if the jug, after having been filled and corked, had been placed on the sidewalk and there exploded, resulting in an injury to a person passing along at the time, according to the theory of appellant's counsel, no liability would be incurred for the reason that no legal duty devolved upon the appellant to examine the jug for foreign matter before filling it, because forsooth, it was brought there to be filled by a purchaser. In this connection it is further to be noted that there is no testimony which even hints that Hopper had any knowledge before or at the time of delivering the jug in question to the appellant's employe of the existence of any foreign matter therein, or was aware that hydrofluoric acid coming in contact with certain foreign matter would generate gases and cause an explosion. As has already been pointed out he left the selection of the jugs to be filled to the appellant's employe.

There is nothing to be found in the testimony that appellant before the happening of the accident, in the conduct of its business in filling jugs with hydrofluoric acid, differentiated as to the manner of examination to be made for the presence of foreign matter, in filling its own jugs and those jugs brought to its plant by a purchaser, to be refilled. For, in the instant case, the appellant's employe, who filled the jug which exploded, testified that he made an examination of the same for foreign matter as was his custom to make, of all jugs to be filled with such acid.

The theory upon which the case was tried and submitted to the jury was that of negligence.

We think the facts and circumstances developed by the testimony gave rise to a duty on the part of appellant to use due and reasonable care commensurate with the danger of explosion to be apprehended from filling a jug, which contained foreign matter, with hydrofluoric acid, by making a careful examination and inspection of the jug, for siliceous matter before filling the same, irrespective of the fact whether it was its own jug or one brought to its plant by a purchaser, to be filled.

In the instant case, the fact of the explosion of the jug gave rise to questions of fact for a jury to determine. Did the appellant's employe examine and inspect the jug as testified to by him? If his statement in that respect is credible, the fact that one of the jugs exploded, resulting from foreign matter contained therein coming in contact with the acid, raised the further inquiry. Did he use due and reasonable care in making such examination commensurate with the danger to be apprehended from the acid coming in contact with siliceous matter?

Having concluded from the facts and circumstances, disclosed by the evidence, that there was a legal duty cast upon the appellant to use due and reasonable care in examining and inspecting the jugs brought to it by Hopper to be filled with hydrofluoric acid, and whether or not the appellant company used that due and reasonable care devolved upon it in examining the jug, was a jury question, it follows, therefore, that the motions for a nonsuit and for a direction of verdicts for the defendants were properly denied.

It is next argued in appellant's brief "that the court erred in submitting to the jury the question that the accident was due to the presence or lack of paraffin on the cork used in jug which caused the accident." This contention is based upon the refusal of the trial judge to charge the defendant's request. "There is no evidence in the case that the accident was the result of the presence or lack of paraffin on the cork used."

A reference to the charge discloses that the trial judge simply adverted to the fact that there was a dispute between the witnesses adduced by the plaintiff and those for the defendant as to whether or not the jug which exploded contained a paraffined cork. Under the evidence the trial judge could not have properly charged that there was no testimony in the case that the accident was the result of the presence or lack of paraffin on the cork used, for there was testimony in the case that one of the jugs was corked with paraffin around the cork and the other jug which exploded was not so corked, though the contents of both jugs were drawn from the same source, and though there was testimony to the effect that both jugs became hot, which indicated, according to the experts' testimony, a rise of temperature, but, nevertheless, the jug which contained the paraffined cork remained firm, whilst the jug which was alleged to have been corked by a common cork blew out. Such a situation presented a question of fact for the jury to determine, whether or not the paraffining of the cork had any bearing whatever upon what happened.

Lastly, it is argued that the plaintiff Hopper was guilty of contributory negligence in law, and that his negligence was the proximate cause of the injury. There is not a scintilla of evidence in the case which tended to show that Hopper had any knowledge whatever of any danger of explosion which might result from contact of hydrofluoric acid with a foreign substance, such as silicates. Without such knowledge or warning Hopper cannot be properly charged with having assumed any risk of danger.

For the reasons stated the judgment in each case is affirmed, with costs.

*For affirmance*—KALISCH, BLACK, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, DEAR, JJ.  8

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, KATZENBACH, KAYS, HETFIELD, JJ.  6.