[No. B002786. Second Dist., Div. One. June 20, 1984.]

JAMES BLACKWELL et al., Plaintiffs and Appellants, v.
PHELPS DODGE CORPORATION, Defendant and Respondent.

**COUNSEL**

Hawkins & O'Connell and Richard M. Hawkins for Plaintiffs and Appellants.

John Nouskajian, Jr., and Joseph R. Serpico for Defendant and Respondent.

**OPINION**

**LILLIE, J.**—In this action to recover damages for personal injuries, plaintiffs appeal from judgment of dismissal entered in favor of defendant Phelps Dodge Corporation following the granting of defendant's motion for summary judgment.

Named as defendants, in addition to Phelps Dodge, were Union Tank Car Company and McKesson Chemical Company. The complaint contained three causes of action on behalf of each plaintiff.[1] The first cause of action

---

[1]The plaintiffs are three workmen who allegedly sustained personal injuries in attempting to unload a tank car filled with sulfuric acid, and the wife of one of those men. The complaint includes a cause of action on behalf of the latter plaintiff for damages for loss of consortium. Such cause of action is immaterial for purposes of this appeal, and we therefore ignore it.

alleged in pertinent part: "That on or about the 15th day of April, 1980, defendants and each of them operated, owned, maintained, managed, worked on, constructed, controlled, supervised and had custody of the premises known as the McKesson Chemical Company, located at Santa Fe Springs, California. [¶] That at said time and place defendants and each of them as above mentioned, controlled, managed and supervised said premises in such a negligent manner so as to proximately cause and permit a tank car to have pressure blowout, blowing sulphuric acid on the plaintiff, so as to proximately thereby cause plaintiff severe personal injuries . . . ." The second cause of action alleged: "That at all times mentioned herein, defendants and each of them sold, furnished, supplied and maintained a defective product in a defective container, and that the defective container permitted a pressure buildup, which pressure was released upon opening of the tank; that it was further defective in that there was no warning concerning the pressure, no instructions concerning how to relieve the pressure, no method or means for relieving the pressure, and no instructions as to the proper method of unloading the tank car, so as to proximately cause and permit a tank car to have a pressure blowout, blowing sulphuric acid on the plaintiff thereby causing plaintiff severe personal injuries . . . ." The third cause of action alleged: "That the defendants and each of them furnished and supplied a tank carload of sulphuric acid to plaintiff's employer, and as such were in control of the said tank car, which constituted a peculiar risk of injury to persons opening said tank car, and thereby caused plaintiff severe personal injuries . . . ."

In support of its motion for summary judgment defendant Phelps Dodge produced evidence[2] showing: The tank car mentioned in the complaint was designed, manufactured and owned by Union Tank and leased by Union Tank to McKesson, plaintiffs' employer, pursuant to a written lease. McKesson sent the car to defendant in Hidalgo, New Mexico, to be filled with sulphuric acid and returned to McKesson. After defendant loaded the acid into the tank car, the car went to McKesson's bulk chemical plant in Santa Fe Springs, California. There plaintiffs attempted to attach unloading fittings to the tank car in order to transfer the acid into a storage tank. One of the plaintiffs, apparently without first venting the tank car, unscrewed the unloading line thereby allowing the acid to escape and come into contact with plaintiffs. In response to an interrogatory asking what warnings or instructions they contended should have been on the tank car, plaintiffs stated: "There should have been warnings and instructions not to open the discharge cap without removing the cap off of the inlet line, since the dis-

---

[2]The evidence consisted of the declaration of defendant's attorney identifying and incorporating answers to interrogatories and a declaration of plaintiffs' attorney in opposition to a motion for summary judgment by McKesson, together with exhibits attached to that declaration.

charge pipe went all the way to the bottom of the tank car; there is no way, when the cap is removed, that the pressure would be relieved without the contents spurting out. It is contended that there should be warnings to open the inlet cap first, which would let only air off, not material; that if these warnings and instructions were given to people using the tank cars, this accident would not have happened. It is also contended that both the inlet and the outlet openings should have had valves on them so that a hose or pipe could be attached thereto, so that no material could come out until the valve was opened. . . ."

In opposition to the motion for summary judgment plaintiffs submitted the declaration of their attorney stating: defendant knew that unless the sulfuric acid was unloaded in a certain manner it would cause severe personal injuries to those handling and unloading it; with such knowledge, defendant loaded the tank car with sulfuric acid and sent it to plaintiffs' employer; defendant gave no warning of the dangerous properties of the acid and how it should be unloaded; further, with knowledge of the type of tank car that was carrying the acid, defendant gave no instructions or warnings as to the fact that pressure could build up within the tank in transit, nor did defendant give any warning as to what vents or pipes should be used in unloading the acid; "no markings or decals or other instructions" were given to plaintiffs or to the recipients of the acid; when plaintiffs opened a pipe on top of the tank car for the purpose of unloading its contents, the pressure generated within the tank caused the acid to be ejected onto plaintiffs, injuring them severely.

■ A defendant moving for summary judgment must show clearly that the plaintiff cannot prevail on any cause of action or theory pleaded by him. (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724].) In the present case the evidentiary materials submitted in support of and in opposition to the motion for summary judgment show that the facts are not in dispute. ■ Thus, there was no triable issue of fact. The only issues presented to the trial court were issues of law, which may be determined in summary judgment proceedings. (*Allis-Chalmers Corp.* v. *City of Oxnard* (1981) 126 Cal.App.3d 814, 818 [179 Cal.Rptr. 159].) ■ The sole question on appeal is whether the trial court properly applied the law to the uncontroverted evidence in granting defendant Phelps Dodge's motion for summary judgment and dismissing the action as to that defendant.

The evidence shows that defendant supplied sulfuric acid to McKesson. For that purpose McKesson sent to defendant in New Mexico a tank car leased by McKesson from United Tank, which designed, manufactured and owned the car. After defendant loaded the tank car with sulfuric acid, the

car was sent to McKesson's bulk chemical plant at Santa Fe Springs, California. As the result of pressure generated within the tank the acid therein was caused to spew out and come into contact with plaintiffs when they attempted to unload it from the tank. Defendant, with knowledge of the dangerous properties of sulfuric acid and the type of tank car used to transport it, did not warn plaintiffs of a possible accumulation of pressure within the tank nor instruct them on how safely to unload the acid.

Plaintiffs' first cause of action alleged that defendant "controlled, managed and supervised" McKesson's premises in such a negligent manner as to cause the tank car to have a pressure blowout, spraying acid on plaintiffs. The record establishes as a matter of law that plaintiffs cannot prevail against defendant on that cause of action. Defendant merely sent the carload of acid from its plant in New Mexico to McKesson in California. In no manner did defendant control, manage or supervise McKesson's premises.

While plaintiffs' second cause of action alleged that defendant sold "a defective product in a defective container," subsequent allegations leave no doubt that the product claimed to be defective was the tank car, not the acid. The tank car allegedly was defective because it permitted the formation of pressure in its cargo of acid, and contained neither warnings concerning such pressure nor instructions as to the proper method of unloading the acid from the tank. The third cause of action alleged that defendant supplied a tank carload of sulfuric acid to plaintiffs' employer, and "as such [was] in control" of the tank car. The evidence establishes that defendant had control of the tank car only while it was at defendant's facility; defendant relinquished control of the car upon its being filled with acid and sent from defendant's facility in New Mexico to McKesson's bulk chemical plant in California. From such evidence it appears that defendant had control of the car for a sufficient time to have had an opportunity to put appropriate warnings and instructions on it.

█ A product may be defective if it is dangerous because it lacks adequate warnings or instructions. (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 428 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].) Where a manufacturer or supplier of a product is or should have been aware that the product is unreasonably dangerous absent a warning and such warning is feasible, strict liability in tort will attach if appropriate and conspicuous warning is not given. (*Burke* v. *Almaden Vineyards, Inc.* (1978) 86 Cal.App.3d 768, 772 [150 Cal.Rptr. 419].) While failure to warn may create liability for harm caused by use of an unreasonably dangerous product, that rule does not apply where it was not any unreasonably dangerous condition or feature of *defendant's* product which caused the injury. (*Garman* v. *Magic Chef, Inc.* (1981) 117 Cal.App.3d 634, 638 [173 Cal.Rptr. 20].)

▇▇ The product alleged to have been dangerous, and hence defective, for lack of warnings and instructions was not the acid supplied by defendant, but the tank car in which the acid was shipped by defendant to McKesson; that car was manufactured and owned by Union Tank and leased by it to McKesson which sent the car to defendant for shipment of the acid. Put another way, it was not the product (acid) supplied by defendant, but the container (tank car) in which that product was shipped, which was allegedly defective for lack of warnings or instructions. Under these circumstances, defendant incurred no liability to plaintiffs for its failure to warn them of danger from formation of pressure in the acid allegedly caused by defective design of the tank car, or to instruct them on how safely to unload the acid from the tank.

In support of a contrary conclusion plaintiffs cite *Gall* v. *Union Ice Company* (1951) 108 Cal.App.2d 303 [239 P.2d 48]. There, the plaintiffs' decedent was killed when he was struck by an exploding drum filled with sulfuric acid which contained no warning label. It appears that defendant both manufactured the acid and supplied the drum in which it was shipped to decedent's employer. In affirming judgment for plaintiffs the court quoted the following excerpt from a comment to section 388, Restatement, Torts: " 'g. The duty, which the rule stated in this Section imposes upon the supplier of a chattel for another's use, is to exercise reasonable care to give to those who are to use the chattel the information which the supplier possesses and which he should realize to be necessary to make its use safe for them and those in whose vicinity it is to be used . . . .' " (108 Cal.App.2d at p. 309.) That rule is inapplicable in the present case for, unlike the situation in *Gall,* defendant supplied only the acid; it did not furnish the allegedly defective container (tank car) in which the acid was shipped to plaintiffs' employer.

A well known treatise states: "In regard to the package or container in which a product is sold, the duty of reasonable care is also applicable to the seller of the product, as distinguished from the seller of the package or container." (63 Am.Jur.2d, Products Liability, § 294, p. 344.) Illustrative of this principle is *Hopper* v. *Charles Cooper & Co.* (1927) [104 N.J.L. 93 [139 A. 19, 55 A.L.R. 187]. There the plaintiff obtained some lead jugs from a florist and took them to defendant to be filled with hydrofluoric acid. Upon plaintiff's request defendant selected the two best jugs for that purpose and filled them with acid. Shortly after the jugs were placed in plaintiff's car the cork blew out of one of them and acid was sprayed on plaintiff, injuring him. The explosion was caused by the acid's coming into contact with siliceous matter in the jug. It was held that the fact that plaintiff furnished the jugs in which the acid was placed did not relieve defendant of the duty of ascertaining that the jugs were clean and suitable for such use.

(139 A. at pp. 21-22.) A like conclusion does not follow in the present case.

The tank car (container) was alleged to be defective because it permitted the formation of pressure in its cargo of sulfuric acid, and contained no warning of such pressure or instructions on how properly to unload the acid. The evidence shows without dispute that McKesson furnished the car and sent it to defendant in New Mexico to be filled with acid and returned to McKesson in California. Thus, only if defendant affixed appropriate warnings and instructions to the tank car would they have reached the persons who were to unload the acid from the tank. The car was leased by McKesson from Union Tank pursuant to a written lease which included the following provision: "8. . . . No lettering or marking of any kind shall be placed upon said cars by Lessee without written permission of Lessor, provided, however, Lessee may cause said cars to be stencilled, boarded or placarded with letters not to exceed two inches (2") in height to indicate to whom the cars are leased." In his declaration in opposition to the motion for summary judgment plaintiffs' attorney stated: "Plaintiffs' investigation has revealed that since this accident, warnings concerning pressure in the tank cars have been painted on the tank cars as follows: [¶] 'CONTENTS MAY BE UNDER PRESSURE. DO NOT OPEN WITHOUT APPROPRIATE PROTECTION.'" It was not stated who furnished such warning. ■ Although the declarations of the party resisting a motion for summary judgment are to be liberally construed in his favor, a summary judgment is proper if the declarations of the moving party state facts which justify a judgment in his favor and the counterdeclarations do not supply evidence to create a triable issue of fact. (*Terry* v. *Atlantic Richfield Co.* (1977) 72 Cal.App.3d 962, 971 [140 Cal.Rptr. 510].) In determining whether a triable issue of fact is raised, the court may consider inferences reasonably deducible from all of the evidence before it. (Code Civ. Proc., § 437c, subd. (c); *DeSuza* v. *Andersack* (1976) 63 Cal.App.3d 694, 698 [133 Cal.Rptr. 920].) ■ The trial court here reasonably could infer from such evidence that the warning was painted on the tank cars either by the lessor-owner, Union Tank, or the lessee, McKesson (with lessor's permission), but not by defendant. The uncontroverted fact that defendant neither owned nor leased the tank car in question establishes that defendant was without authority to put on the car the warnings and instructions the absence of which allegedly made the car a defective product. Thus, as a matter of law, defendant cannot be liable to plaintiffs for having failed to provide such warnings and instructions.

Plaintiffs argue that a duty on the part of defendant to give appropriate warning and instructions was created by federal regulations governing transportation of hazardous materials. (49 C.F.R. § 173.30 et seq. (1981).) We

do not agree. The regulations upon which plaintiffs rely[3] prescribe the procedure to be followed for the safe transportation of dangerous articles in tank cars, and require removal and replacement of certain tank car safety devices which show signs of deterioration. Plaintiffs sustained personal injuries in attempting to unload acid from the tank car after it had reached its destination, not while it was in the process of transportation. Further, the tank car was alleged to be defective not because of deteriorated parts, but because it allowed its cargo of sulfuric acid to become pressurized and lacked appropriate warnings and instructions on how properly to unload the acid.

The judgment is affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied July 16, 1984, and appellants' petition for a hearing by the Supreme Court was denied August 21, 1984. Bird, C. J., was of the opinion that the petition should be granted.

---

[3]Such regulations provide in pertinent part: "When tanks are loaded and prior to shipping, the shipper must determine to the extent practicable, that the tank, safety appurtenances and fittings are in proper condition for the safe transportation of the lading. . . ." (§ 173.31 (b)(1).)

"Safety relief devices of the frangible disc or fusible plug type used on tanks of classes DOT-106A or 110A must be inspected before each loaded trip of tank by removing at least one vent for visual inspection; if it shows signs of deterioration, all devices must be removed and inspected and those which do not meet the requirements must be renewed." (§ 173.31 (b)(4).)