[No. D010783. Fourth Dist., Div. One. Mar. 21, 1991.]

CHARLES EDWARDS, Plaintiff and Appellant, v.
POST TRANSPORTATION COMPANY, Defendant and Respondent.

**COUNSEL**

Jay S. Bloom for Plaintiff and Appellant.

Staitman, Snyder & Tannenbaum and Gerald P. Peters for Defendant and Respondent.

**OPINION**

**FROEHLICH, J.**—Charles Edwards (Edwards) appeals from a defense verdict and judgment rendered in his action for personal injuries against Post Transportation Company (Post). His case was presented to the jury on theories of negligence. His sole ground of appeal is that the court refused to permit him to argue, in addition to the negligence theory, a claim of strict liability based on Post's participation in an ultrahazardous activity. In harmony with this ruling, the court refused to include BAJI No. 6.60 in its charge to the jury.[1]

## FACTUAL BACKGROUND

At the time of his injury Edwards was an employee of Norris Industries (Norris), a manufacturer of zinc-plated cartridge cases. Norris had constructed a waste treatment facility to dispose of certain emulsions from its plating plant. Part of the new facility consisted of two storage tanks: one for sodium bisulfite and one for sulfuric acid. Because of the differing natures of these chemicals, the pipe leading to the sodium bisulfite tank was to be

---

[1] BAJI No. 6.60 provides:

"A person who carries on an ultrahazardous activity is liable, regardless of the amount of care used, for injuries to persons or property of which such activity was the proximate cause.

"This liability extends only to such persons or property as the one carrying on the activity should recognize as likely to be harmed thereby or by its unpreventable miscarriage."

constructed of plastic, while the pipe leading to the sulfuric acid tank was required to be of stainless steel.

Through error in construction, the pipes were switched, the plastic pipe being hooked to the sulfuric acid tank and vice versa. When this was noticed it was concluded the easiest remedy would be to change the identity of the tanks, the tanks themselves apparently being interchangeable. Although this was done, the tanks were inadequately labeled. As a result, the driver for Post, when delivering a tank truck of sulfuric acid, was directed to pump the acid into the wrong pipe. The material was thus introduced into the sodium bisulfite tank, which unfortunately contained a residue of sodium bisulfite and water. A severe and immediate chemical reaction followed which resulted in toxic gas being released from the tank. Edwards, who was working in an adjacent part of the Norris plant, was overcome by the gas and suffered severe injuries.

The negligence or other fault of Norris was not in issue. By virtue of his employment status, Edwards's recourse against Norris was limited to workers' compensation. Since Edwards had no relationship with Post, however, he was free to bring a common law action for personal injuries. This case resulted.

## ISSUE

The sole issue on appeal is whether, under the factual circumstances presented, Edwards should have been permitted to assert liability of Post based on the strict liability principles of the doctrine of ultrahazardous activity. ■ This doctrine, first enunciated in *Rylands* v. *Fletcher* (1868) L.R. 3 H.L. 330, imposes liability for damage proximately caused by one who carries on an "ultrahazardous" activity. As defined by the California restatement of the doctrine, "An activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (b) is not a matter of common usage. . . ." (*Luthringer* v. *Moore* (1948) 31 Cal.2d 489, 498 [190 P.2d 1], quoting Rest., Torts, § 519.)

■ It is established that whether an activity is an ultrahazardous activity is a question of law for court decision. The trial court was therefore correct, after having heard the evidence presented at trial on the subject, in issuing its ruling determining the matter. (*Luthringer* v. *Moore, supra,* at p. 496; *Smith* v. *Lockheed Propulsion Co.* (1967) 247 Cal.App.2d 774, 785 [56 Cal.Rptr. 128, 29 A.L.R.3d 538].) The issue having been resolved as a matter of law, the scope of appellate review is not limited, and we are not bound by the preliminary determination of the trial court. (*Fullerton Union*

*High School Dist.* v. *Riles* (1983) 139 Cal.App.3d 369, 383 [188 Cal.Rptr. 897]; *Green* v. *Smith* (1968) 261 Cal.App.2d 392, 398 [67 Cal.Rptr. 796].)[2]

## DISCUSSION

The California utilization of the doctrine of ultrahazardous activity relies upon the exposition which has been contained in the Restatement of Torts, and is now set forth in sections 519 and 520 of the Restatement, Second Edition. (See *Luthringer* v. *Moore, supra*, 31 Cal.2d 489 at p. 496; *Smith* v. *Lockheed Propulsion Co., supra*, 247 Cal.App.2d at p. 785; *Ahrens* v. *Superior Court* (1988) 197 Cal.App.3d 1134, 1145-1146, fn. 9 [243 Cal.Rptr. 420].) Since there is no case directly addressing sulfuric acid use in terms of its nature as an ultrahazardous activity,[3] we must resort to the guidelines set

---

[2] The actual application of this principle of appellate review is more difficult than its simple statement suggests. All authorities agree that determining whether an activity is "ultrahazardous" so as to result in strict liability is a question of law, and not to be submitted to a jury. It is therefore by definition open to full de novo review on appeal. The *nature* of the decision, however, is peculiarly related to a weighing of factual information: specifically, is the activity in question so hazardous and unusual that it deserves the special designation of "ultrahazardous?" While certain activities, such as the production and transportation of bombs or dynamite, may be subject to characterization based upon common knowledge, it is obvious that other activities involve danger which can be appraised only upon the advice and education of experts. The propensities of sulfuric acid, for instance, as involved in this case, cannot be said to be sufficiently familiar to the ordinary judge to permit his reaching a conclusion, without expert help, as to their danger.

The trial judge in this case was required, therefore, to consider testimony on the subject of sulfuric acid. He then made his decision that its use and transportation was not an ultrahazardous activity based on his construction of this testimony. Had there been a conflict in the testimony, we apprehend the judge's resolution of it would have been a factual finding not subject to appellate reversal if supported by evidence. We conclude, however, there was no significant dispute in the testimony as to the attributes and danger of sulfuric acid. The judge's determination that its use is not an ultrahazardous activity is, therefore, purely a determination of law, and is subject to our complete review. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 290, pp. 302, 303; *Peninsula Covenant Church* v. *County of San Mateo* (1979) 94 Cal.App.3d 382, 391 [156 Cal.Rptr. 431].)

[3] We have reviewed the cases involving personal injury from sulfuric acid contact and find none to be directly in point. In *Gall* v. *Union Ice Company* (1951) 108 Cal.App.2d 303, 311-312 [239 P.2d 48], the injury resulting from explosion of a sulfuric acid tank gave rise to an action for damages in negligence. In something of a "throw-away" line, the appellate court stated: "Of course, there is no absolute liability for harm done by sulphuric acid." Similarly, in *Means* v. *Southern California Ry. Co.* (1904) 144 Cal. 473 [77 P. 1001] the principal issue was the duty owed by the railway station to a trespassing teenager who was injured when a tank of acid near which he was standing exploded. While discussing the possibility of strict liability, the court found the evidence in the case was insufficient "to show that sulphuric acid is essentially and inherently a dangerous agency, or that from its nature any particular peril is attendant upon handling it in iron tanks." (*Id.* at p. 481.) See also *Blackwell* v. *Phelps Dodge Corp.* (1984) 157 Cal.App.3d 372 [203 Cal.Rptr. 706], which dealt with the obligation of posting signs warning of danger from sulfuric acid. We deem none of these cases to establish, as a matter of law, that the storage, transportation and use of sulfuric acid in California is not an ultrahazardous activity. Since the concept of ultrahazardous depends upon time, place

forth in the Restatement. ■ Using the term "abnormally dangerous" rather than "ultrahazardous," the Restatement sets forth six factors which are to be considered. They are:

"(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

"(b) likelihood that the harm that results from it will be great;

"(c) inability to eliminate the risk by the exercise of reasonable care;

"(d) extent to which the activity is not a matter of common usage;

"(e) inappropriateness of the activity to the place where it is carried on; and

"(f) extent to which its value to the community is outweighed by its dangerous attributes." (Rest.2d Torts, § 520.)

As explained in comment (f) to section 520, the several factors are to be considered together; establishment of one factor alone is usually not sufficient to categorize an activity; several factors will ordinarily be required.

■ We commence our analysis of the factors and our application of them to the use of sulfuric acid by dealing with those that are easily resolved. We are satisfied, for instance, that sulfuric acid is "not a matter of common usage." Although the substance is no doubt regularly used in certain industries, like the use of dynamite, it is not carried on by any large percentage of the population. Although it can be argued that sulfuric acid is commonly used in various chemical applications, we believe this not to be the sense in which this factor is intended to be applied. Factor (d), we think, is more for the purpose of exclusion of an activity from classification as ultrahazardous than it is for inclusion. There are many activities in our modern society which, although clearly very hazardous, like automobile driving, we accept because they are so commonly utilized. Sulfuric acid does not fit this concept, and we think factor (d) weighs in plaintiff's favor.

Similarly, factor (f) is resolved, we believe, in favor of a finding of ultrahazard. Sulfuric acid, though unquestionably a useful and beneficial chemical, is not so necessary to society that we would insulate its users from strict

---

and circumstance, as discussed in the Restatement, we doubt that any fast and permanent classification will be possible.

liability, if we otherwise decide strict liability should be imposed. Factor (e) we find not to be of significant importance in our analysis. Although appellant argues that Edwards, working in a part of the Norris plant not related to the waste treatment facility, should not have been subject to exposure from the sulfur gas, we think use of chemicals, generally, in modern manufacturing plants is an activity reasonably to be expected. It is not like drilling an oil well in a residential district. (See *Green* v. *General Petroleum Corp.* (1928) 205 Cal. 328 [270 P. 952, 60 A.L.R. 475].)

The factors we have examined to this point, although certainly factual in nature, are closely related to questions of public policy. In the usual case we would assume the court would largely draw upon its own knowledge of the community and its values to determine them. The first three factors, however, pertain more to the characteristics of the activity itself and would, in the usual case and in this case, require establishment by evidence introduced at trial. We look, therefore, to the evidence bearing on the danger involved in using sulfuric acid and the potential of risk elimination through the exercise of care.

Experts at trial testified that the gas created by the mixed chemicals would cause a chemical burn—that it would attack any human tissue. The chemical is highly toxic, very reactive, and will attack most materials. It is listed as a "hazardous material" by several governmental agencies. One expert, when asked to categorize the hazard of using sulfuric acid as slight, medium or severe, responded: "It is . . . severe—it is [a] highly dangerous chemical." We conclude that the plaintiff by a preponderance of the evidence satisfied Restatement factor (a)—that the use of sulfuric acid involves a "high degree of risk," and factor (b)—that if it comes in contact with humans the resulting harm is likely to be great.

Plaintiff loses his case, however, with the application of factor (c). The issue posed by factor (c) is whether the risk involved in an admittedly dangerous activity can be eliminated through the exercise of reasonable care. The same experts who testified to the dangerous attributes of the acid were in agreement that the actual risk of harm to people could be eliminated by the use of proper handling procedures. One plaintiff's expert, a civil engineer and "sanitarian," agreed that "If . . . sulfuric acid is handled in a proper fashion, it is no danger." Since sulfuric acid is governmentally classified as a hazardous material, its transporters must be specially classified or registered. It appears, however, that such regulation, including special training, is designed to and does eliminate the special risk related to handling the acid. The fact that the material "requires special handling" and one must "be careful with it," as plaintiff's expert testified, leads to the logical conclusion that risk can be eliminated through care.

This conclusion undermines the argument that the use of sulfuric acid should lead to strict liability. The theory of imposition of strict liability for ultrahazardous activity is that the danger *cannot* be eliminated through the use of care. Since the activity is in some sense beneficial, useful or necessary to society, the actor is not deemed negligent simply for engaging in it. Damage resulting to others, however, is taxed to the actor because he is the person who most logically should bear the cost. Where the activity is dangerous only if insufficient care is exercised, ordinary rules of fault are sufficient for allocation of the risk. There is no need for liability without proof of fault, because definitionally if there is damage it will have resulted from negligence and will be compensable.

### DISPOSITION

The judgment is affirmed.

Huffman, J., concurred.

**WIENER, Acting P. J.,** Concurring.—I would approach this case in a more direct fashion and affirm the judgment on the basis of established precedent.[1]

The predicate to the majority's holding that sulfuric acid is not ultrahazardous is its conclusion that "there is no case directly addressing sulfuric acid use in terms of its nature as an ultrahazardous activity." (Maj. opn., *ante*, p. 984, fn. omitted.) On this basis the majority says it must "resort to the guidelines set forth in the Restatement." (Maj. opn., *ante*, pp. 984-985.) To explain its conclusion the majority opinion directs us to a footnote (maj. opn., *ante*, p. 984, fn. 3) in which it cites three cases involving personal injury caused by sulfuric acid, *Gall* v. *Union Ice Company* (1951) 108 Cal.App.2d 303, 311-312 [239 P.2d 48], *Means* v. *Southern California Ry. Co.* (1904) 144 Cal. 473 [77 P. 1001] and *Blackwell* v. *Phelps Dodge Corp.* (1984) 157 Cal.App.3d 372 [203 Cal.Rptr. 706], describing each as not being "directly in point." (Maj. opn., *ante*, p. 984, fn. 3.) Although the

---

[1] This approach, however, precludes application of California Rules of Court, rule 977(b). In the interest of brevity I do not discuss this aspect of the case nor do I dwell on the majority's questionable assumption that California has adopted the more restrictive Restatement of Torts Second view of abnormally dangerous activities (see *Ahrens* v. *Superior Court* (1988) 197 Cal.App.3d 1134, 1142, fn. 6 [243 Cal.Rptr. 420]); its failure to consider whether strict liability should apply where the *defendant's* exercise of reasonable care cannot eliminate the risks created by the negligence of third persons (see Rest.2d Torts, § 522; *Siegler* v. *Kuhlman* (1972) 81 Wn.2d 448 [502 P.2d 1181, 1187]); and the analytical void underlying its selection of the single Restatement factor (c) as dispositive when it has also said no one factor alone is sufficient to categorize an activity (maj. opn., *ante*, at p. 985).

majority correctly labels *Gall* v. *Union Ice Company, supra,* I believe the remaining two cases are sufficiently "in point" to govern our decision.[2]

The California Supreme Court in *Means* v. *Southern California Ry. Co., supra,* 144 Cal. 473, examined the question whether a different rule of liability other than negligence should be applied to sulfuric acid because it "was of such a dangerous character that the defendant was under legal obligation to the public generally" not to place it in certain locations. (144 Cal. at p. 481.) *Means* answered this question by stating that on the basis of the evidence presented there was nothing to show that sulfuric acid was "essentially and inherently a dangerous agency, or that from its nature any particular peril is attendant upon handling it in iron tanks," to cause injury to property or person. (*Ibid.*) The court further explained that its discussion of the facts was for the express purpose of pointing out that "sulfuric acid consigned and handled in tanks, is not inherently such a dangerous substance as to have required defendant to take extra precautions, or exercise more than ordinary care in disposing of it in its freight-house, or *which calls for the application of the rule contended for by plaintiff enlarging the liability of defendant.*" (At p. 482, italics supplied.)

Like *Means* the factual record here also fails to show that sulfuric acid is inherently a dangerous agency. Pursuant to *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], we must affirm.

*Blackwell* v. *Phelps Dodge Corp., supra,* 157 Cal.App.3d 372, affirmed a summary judgment in favor of a chemical company which had loaded sulfuric acid into a tank car holding the defendant had no duty to place a warning on the tank. The court explained the product alleged to have been dangerous, and hence defective, for lack of warning and instructions was not the acid supplied by defendant, but the tank car in which the acid was shipped. (At p. 378.) In rejecting plaintiff's arguments pertaining to the sulfuric acid *Blackwell* emphasized that "[p]laintiffs sustained personal injuries in attempting to unload acid from the tank car after it had reached its destination, not while it was in the process of transportation." (At p. 380.) This latter point, strikingly similar to the issue presented here, is an independent basis on which we should affirm the judgment.

This case does not require us to decide whether the transportation and delivery of sulfuric acid is an ultrahazardous activity. As in *Blackwell,* Post

---

[2] Interestingly, even after a rather extensive electronic search, I have been unable to find any case in the United States holding the use of sulfuric acid involves ultrahazardous activity. In this context one can only ponder why the majority incorrectly suggests that in spite of community standards and common knowledge to the contrary, a trial court may find *any* product is not ultrahazardous if it accepts the testimony of the defendant's expert witness. (See maj. opn., *ante,* p. 984, fn. 2.)

was not engaging in that activity at the time the injury occurred. The *transportation and delivery* was complete and Edwards's injury was a function of the *storage* of sulfuric acid for which only Norris is responsible. A defendant's strict liability for injuries caused by ultrahazardous activity is necessarily "confined to consequences which lie within the extraordinary risk posed by the abnormally dangerous activity . . . ." (*Goodwin* v. *Reilley* (1985) 176 Cal.App.3d 86, 92 [221 Cal.Rptr. 374].) Here, where the acid was safely delivered to the location specified by the customer, the *delivery* had ceased. The risk of an improperly designed or maintained storage tank is not one of the risks which makes the transportation and delivery of sulfuric acid dangerous.

Based on the foregoing I would affirm.

A petition for a rehearing was denied April 11, 1991, and appellant's petition for review by the Supreme Court was denied June 19, 1991. Mosk, J., was of the opinion that the petition should be granted.