Filed 1/7/25 Certified for Publication 1/24/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAYLON CARMICHAEL et al.,<br><br>  Plaintiffs and Appellants,<br><br>    v.<br><br>CAFÉ SEVILLA OF RIVERSIDE,<br>INC., et al.,<br><br>  Defendants and Respondents. | G063589<br><br>(Super. Ct. No. RIC1906133)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Daniel A. Ottolia and Craig G. Riemer, Judges. Affirmed.

KRA Legal and Kenechi R. Agu for Plaintiffs and Appellants.

The Law Offices of Richard A. Higgins and Richard A. Higgins; Nordic Star and Nocholas H. Van Parys for Defendants and Respondents.

\*          \*          \*

Plaintiffs were injured at a nightclub shooting that occurred during a rap concert featuring performers from rival gangs. Plaintiffs sued the defendants, the owner and operators of the nightclub, for negligence per se and strict liability on an ultrahazardous activity theory. Generally, plaintiffs claimed the defendants had failed to properly plan the event and to provide adequate security. The trial court granted defendants summary adjudication on the negligence per se claim and judgment on the pleadings on the ultrahazardous activity claim. Judgment was then entered in defendants' favor.

Plaintiffs appeal the judgment, arguing there are triable issues of fact as to both claims. We disagree. First, plaintiffs' negligence per se claim is based on the defendants' alleged violation of certain provisions of a conditional use permit (the permit) to operate the nightclub. But the permit was not designed to prevent the type of injuries that plaintiffs sustained. Second, hosting a rap concert, even one with performers from rival gangs, is not an ultrahazardous activity. Thus, we affirm the judgment.

FACTS AND PROCEDURAL HISTORY

This case involves multiple lawsuits that were filed against defendants Café Sevilla of Riverside, Inc. (Café Sevilla), Café Sevilla Incorporated, Eric Van Den Haute, and Anne Van den Haute (collectively, defendants). The lawsuits were consolidated in July 2021, but it appears the different complaints remained separate. The specific complaint involved in this appeal was filed by Raylon Carmichael, Latasha Love-Moore, Antwon Davis, Markeith White, Keisha Walker, Tyrecce Redic, and Constantina Hall (the plaintiffs).

Plaintiffs' complaint arises from a shooting that occurred on October 29, 2018, at a nightclub in Riverside (the nightclub) that was owned

by Café Sevilla and operated by defendants. Plaintiffs alleged a rap concert was held at the nightclub on October 29 (the concert), which featured performers from rival gangs. During their performances, some of the rappers performed songs and made "'gang signs'" that antagonized rival gang members in attendance. These acts allegedly increased tensions between the rival gangs, which escalated to violence when gang members began firing guns inside and outside the nightclub. Plaintiffs were attendees of the concert who suffered physical and mental injuries from the shooting.

Plaintiffs claimed defendants did not take reasonable measures to reduce their risk of harm, including failing to (1) have enough security guards, (2) conduct adequate searches of attendees, (3) prevent loitering in certain areas of the nightclub, (4) provide security fencing to separate the nightclub from the public, (5) have enough active surveillance cameras to monitor the nightclub, (6) notify the Riverside Police Department about the concert so they could coordinate efforts to secure the nightclub, and (7) impose a proper dress code that prevented people from bringing in backpacks or wearing masks or hoodies to hide their identities. Plaintiffs also claimed that several of these failures violated defendants' Minor Conditional Use Permit (previously defined as, the permit) from the City of Riverside to operate the nightclub.

Plaintiffs initially pled causes of action for premises liability, strict liability for ultrahazardous activity, negligence per se, and negligence. The parties do not explain what happened to the premises liability and negligence claims. But by the time defendants filed the relevant motion for summary judgment and/or summary adjudication (the motion) in the consolidated lawsuits, plaintiffs' only remaining claims were for negligence

3

per se and strict liability for ultrahazardous activity.[1] The negligence per se claim was based on allegations that defendants had violated several conditions of the permit during the concert. The ultrahazardous activity claim alleged that sponsoring, promoting, and conducting the concert was an ultrahazardous activity that resulted in the plaintiffs' harm.

The trial court did not grant summary judgment, but it ruled in defendants' favor on both claims. First, it granted summary adjudication on the negligence per se claim. Second, as to the ultrahazardous activity claim, it treated the motion as a motion for judgment on the pleadings, which it granted without leave to amend. The court subsequently entered judgment in defendants' favor. The judgment explains, "Hosting a nightclub event, even one that includes performers who may be associated with gangs, does not constitute an ultrahazardous activity. [Citation.] Hosting such an event does not ensure a likelihood of great harm. For Negligence Per Se, Plaintiffs have failed to establish that a conditional use permit is a statute, ordinance or regulation, which is one of the elements of a negligence per se cause of action."

Plaintiffs now appeal the judgment.

---

[1] At oral argument, the parties agreed the only negligence issue remaining on appeal is negligence per se. The parties also agree in their briefs that prior to filing the motion, defendants had filed two other motions for summary judgment directed at two of the other complaints that were consolidated into this case. These prior motions for summary judgment are not in the record. The record on appeal does not set forth in much detail the procedural history of this case prior to the instant motion.

# DISCUSSION

## I.

### APPLICABLE LAW

"'The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' [Citation.] A defendant moving for summary judgment must show the plaintiff's causes of action have no merit. It may do so by negating an element of a cause of action or showing it has a complete defense to a cause of action. The burden then shifts to the plaintiff to show a triable issue of material fact as to the cause of action or defense." (*Ghazarian v. Magellan Health, Inc.* (2020) 53 Cal.App.5th 171, 182.)

"The trial court's [summary judgment] decision is reviewed de novo, 'considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained.' [Citation.] The reviewing court 'liberally constru[es] the evidence in favor of the party opposing the motion and resolv[es] all doubts about the evidence in favor of the opponent.' [Citation.] Similarly, 'any doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion.'" (*Ghazarian v. Magellan Health, Inc.*, *supra*, 53 Cal.App.5th at p. 182.)

## II.

### NEGLIGENCE PER SE

The common law doctrine of negligence per se has been codified in Evidence Code section 669.[2] (*Gravelin v. Satterfield* (2011) 200 Cal.App.4th 1209, 1218.) This statute provides that "[t]he failure of a person to exercise due care is presumed if . . . [¶] (1) [h]e violated a statute, ordinance, or regulation of a public entity; [¶] (2) [t]he violation proximately caused death or injury to person or property; [¶] (3) [t]he death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) [t]he person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." (§ 669, subd. (a).) Plaintiffs have not established all the statute's elements.

First, the trial court found plaintiffs had failed to show "a conditional use permit is a statute, ordinance or regulation." (See § 669, subd. (a)(1).) We presume this ruling is correct, and plaintiffs have the burden of showing error on appeal. (*Starcevic v. Pentech Financial Services, Inc.* (2021) 66 Cal.App.5th 365, 374.) They have not met their burden. They simply assert section 669, subdivision (a)(1), is interpreted broadly and has been applied to police department manuals and Administrative Code safety orders. (Citing *Stafford v. United Farm Workers* (1983) 33 Cal.3d 319, 324.) But they fail to provide any argument as why section 669, subdivision (a)(1), should be interpreted to include conditional use permits. Nor do they explain how conditional use permits are analogous to police department manuals or

---

[2] All further undesignated statutory references are to the Evidence Code.

Administrative Code safety orders. We will not develop plaintiffs' argument for them. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

Second, even if plaintiffs could show the permit meets the requirements of section 669, subdivision (a)(1), they have not shown their injuries were "of the precise nature [the permit] was designed to prevent." (*Bologna v. City and County of San Francisco* (2011) 192 Cal.App.4th 429, 435 (*Bologna*); § 669, subd. (a)(3).)

In *Bologna*, the plaintiffs were the surviving family members of a man and his sons that were shot and killed by an undocumented immigrant. The plaintiffs alleged the undocumented immigrant was a gang member who had been arrested multiple times for drug offenses. (*Bologna*, *supra*, 192 Cal.App.4th at pp. 432–433.) They claimed the defendants – the City of San Francisco and certain city officials – had violated state and federal laws by adopting "'sanctuary policies'" that harbored undocumented immigrants who had committed drug offenses. (*Id*. at p. 433.) Based on these violations of law, the plaintiffs sought to hold the defendants liable for negligence under section 669. (*Id*. at p. 434.)

Among other laws, the plaintiffs argued the sanctuary policies violated former Health and Safety Code section 11369, which stated, "'When there is reason to believe that any person arrested for a violation of [any of 14 specified drug offenses] may not be a citizen of the United States, the arresting agency shall notify the appropriate agency of the United States having charge of deportation matters.'" (*Bologna*, *supra*, 192 Cal.App.4th at p. 435.) The plaintiffs theorized that because the defendants had not reported the killer to federal authorities for deportation following his drug arrests, he was able to remain in the area and kill the decedents. (*Id*. at pp. 435–436.)

7

The trial court sustained the defendants' demurrer to the negligence claim. (*Bologna*, *supra*, 192 Cal.App.4th at p. 432.) The appellate court affirmed, finding the decedents' killing was not the type of injury former Health and Safety Code section 11369 was designed to prevent. (*Id*. at p. 436.) Rather, based on the statute's legislative history, the court found it was designed to combat the sale and use of illegal drugs. (*Ibid*.) While reporting undocumented immigrants for drug offenses could also prevent them from committing other crimes, this was only an incidental benefit of the statute. (*Id*. at p. 437.) "*That the enactment 'confers some benefit'* on the class to which plaintiff belongs is not enough; if the benefit is 'incidental' to the enactment's protective purpose, the enactment cannot serve as a predicate for liability . . . ." (*Ibid*.)

Here, the record contains multiple documents explaining the permit's purpose. For example, it includes the Recommended Conditions & General Information Notes issued by the City of Riverside's Community & Economic Development Department (the Department) in connection with the permit. This document indicates the permit was required to prevent the nightclub from becoming "detrimental to the public health, welfare or materially injurious to public safety, property or improvements *in the vicinity* or if the property is operated or maintained so as to constitute *a public nuisance*." (Italics added.) The record also contains certain findings made by the Department concerning defendants' alleged violation of the permit. These findings state that the permit "is being or has been exercised as to be detrimental to the public health, safety or welfare so as to constitute a nuisance, hazard or detriment *to the surrounding properties, neighborhood and City in general*." (Italics added.)

Based on the above evidence, which is undisputed, the permit was designed to prevent the nightclub from becoming a detriment to the general public health, a disturbance to the neighboring community, or a "public nuisance." In other words, its primary purpose was to protect the general public from disturbance by the nightclub. The protection of nightclub attendees from violence occurring in the nightclub is not part of the "precise nature" of harm the permit was designed to prevent. (See *Bologna*, *supra*, 192 Cal.App.4th at p. 435.) Like *Bologna*, defendants' compliance with the permit's requirements may have incidentally improved safety for the nightclub's attendees. But that was not its intended purpose.

## III.

### ULTRAHAZARDOUS ACTIVITY

"The modern theory of liability for ultrahazardous activity is that certain activities create such a serious risk of danger that it is justifiable to place liability for any resultant loss on the person engaging in the activity, regardless of lack of culpability on his part." (*Hulsey v. Elsinore Parachute Center* (1985) 168 Cal.App.3d 333, 345.) Factors courts consider when determining whether an activity is ultrahazardous include, "'(a) existence of a high degree of risk of some harm to the person, land or chattels of others; [¶] '(b) likelihood that the harm that results from it will be great; [¶] '(c) inability to eliminate the risk by the exercise of reasonable care; [¶] '(d) extent to which the activity is not a matter of common usage; [¶] '(e) inappropriateness of the activity to the place where it is carried on; and [¶] '(f) extent to which its value to the community is outweighed by its dangerous attributes.'" (*Edwards v. Post Transportation Co.* (1991) 228 Cal.App.3d 980, 985.) Whether an activity is ultrahazardous is a question of law. (*Id*. at p. 983.)

The trial court concluded that hosting the concert did "not ensure a likelihood of great harm." As set forth above, we presume the court's ruling is correct, and plaintiffs have the burden of showing error on appeal. (*Starcevic v. Pentech Financial Services, Inc.*, *supra*, 66 Cal.App.5th at p. 374.)

Again, plaintiffs have failed to show any error in the trial court's ruling. They make a conclusory assertion "that holding a rap concert, featuring provocative artists known for violent lyrics, and inviting rival gang members to attend, is inherently violent and hazardous." But this conclusion is undermined by their actual argument: defendants' "lack of proper security, inadequate conditions, and knowledge of criminal elements in and around the [nightclub] was a substantial factor in causing injuries to [plaintiffs]." Plaintiffs cite specific examples of these failures, including that (1) defendants failed to alert the city of the concert; (2) rival gang members were seated next to each other in the VIP section; (3) there was an insufficient number of security guards inside the nightclub; (4) defendants failed to listen to safety concerns raised by the concert's promoters; (5) security failed to ensure weapons were not brought into the nightclub; and (6) insufficient money was invested in security.

After listing the above examples, plaintiffs conclude the concert was "an ultrahazardous event such that danger could not be avoided." But this conclusion does not follow from plaintiffs' argument. Rather, their argument implicitly explains how the violence could have been avoided: (1) alerting Riverside police about the concert; (2) keeping rival gang members in different areas of the nightclub; (3) providing adequate security guards and performing thorough searches of attendees; and (4) listening to

and addressing safety concerns raised by promoters. As such, plaintiffs have failed to show the concert was an ultrahazardous activity.

Further, while "gangster rap" may involve provocative and violent lyrics, it is a form of creative expression. Courts have found activities without any socially redeeming qualities, like drunk driving, are not ultrahazardous activities. (*Goodwin v. Reilley* (1985) 176 Cal.App.3d 86, 92.) *Goodwin* concluded liability for drunk driving should not extend beyond negligence. (*Ibid*.) We do not believe holding a rap concert, even one with rival gang members performing and antagonizing each other, is as inherently hazardous as drunk driving. Unlike drunk driving, such concerts can be conducted safely with proper planning and security. (See, e.g., *Hulsey v. Elsinore Parachute Center*, *supra*, 168 Cal.App.3d at p. 346 ["[A]lthough parachute jumping is clearly dangerous . . . it can be performed safely"].) Thus, we cannot conclude the concert was an ultrahazardous activity.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


DELANEY, J.

11

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAYLON CARMICHAEL et al.,<br><br>  Plaintiffs and Appellants,<br><br>     v.<br><br>CAFE SEVILLA OF RIVERSIDE,<br>INC., et al.,<br><br>  Defendants and Respondents. | G063589<br><br>(Super. Ct. No. RIC1906133)<br><br>ORDER GRANTING<br>REQUEST FOR<br>PUBLICATION |

Association of Southern California Defense Counsel, Attorney Justin Wong, a third party, has requested that our opinion, filed on January 7, 2025, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.

MOORE, ACTING P. J.

WE CONCUR:

GOETHALS, J.

DELANEY, J.

1